**United States District Court**
**District of Massachusetts**

```
_____
                              )
CRISP HUMAN CAPITAL LIMITED,   )
         Plaintiff,            )
                              )
         v.                    )      Civil Action No.
                              )      08-11404-NMG
AUTHORIA INC.,                 )
         Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

   In this contract dispute, the plaintiff, Crisp Human Capital Limited ("CHC"), has filed a motion to amend its complaint against Authoria Inc. ("Authoria") 1) to bolster its claim of fraud with additional factual allegations and 2) to add a claim under the Massachusetts Consumer Protection Act, M.G.L. c. 93A. Authoria has opposed that motion.

**I.   Background**

   **A.   Factual Background**

   On or about March 30, 2007, CHC, a British company that distributes and resells "Human Capital" software and support services, entered into a Re-seller Agreement ("the Agreement") with Authoria, a Delaware corporation that develops and sells software products focusing on human resources management.  Under the Agreement, Authoria granted CHC the rights to resell certain software called "Performance, Salary, Incentive, and Succession

-1-

Planning software programs, Version 8" ("Version 8").

During preliminary negotiations leading up to the Agreement, CHC alleges that various Authoria employees informed CHC on repeated occasions that its product was

1) fully functioning,

2) of world class quality and

3) complete with supporting documentation, promotional material, pricing, demonstration products, and technical specifications, and could be marketed as such.

Someone at Authoria also allegedly stated that it "had established excellent customer relations in Europe."

On or about February 24, 2008, Authoria withdrew Version 8 and replaced it with "Version 10" which CHC alleges was materially different from Version 8.  Although CHC attempted to resell Version 10, it was mostly unsuccessful.  It claims that 1) Authoria's earlier representations were not accurate as to Version 10 and 2) that Authoria failed to perform under the agreement by not providing such things as adequate demonstration platforms, promotional material and pricing for implementation and support for Version 10.  In response to CHC's requests concerning those items, Authoria allegedly assured CHC repeatedly that it would provide them but never actually did so, thus engaging in a "pattern of delay and empty promises."

**B.   Procedural Background**

On August 14, 2008, CHC filed a complaint alleging counts of

-2-

breach of contract, breach of implied covenant of good faith and fair dealing, fraud, negligent misrepresentation and unjust enrichment.  The following day, without formally serving the complaint, CHC sent a "courtesy copy" of it to Authoria accompanied by a demand for relief under M.G.L. c. 93A, § 9.  The Chapter 93A notice informed Authoria that, if no amicable resolution of the dispute was reached within 30 days, CHC would amend its complaint to add a Chapter 93A claim and would then formally serve the amended complaint.

Authoria proceeded by filing an answer to the initial complaint on September 8, 2008, announcing numerous affirmative defenses and counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing and violation of Chapter 93A.  Three days later, Authoria filed a motion to dismiss CHC's fraud claim pursuant to Fed. R. Civ. P. 9(b).  At the end of the 30-day demand period, Authoria responded to CHC's demand by stating that it was deficient under the statute and that Authoria declined to meet it.

Accordingly, CHC filed the pending motion to amend its complaint by adding a count for violation of Chapter 93A and by adding additional factual allegations in support of the fraud count.  The parties then agreed to stay briefing on Authoria's motion to dismiss pending the resolution of CHC's motion to amend.

-3-

II.  **Legal Analysis**

    A.  **Legal Standard**

Pursuant to Fed. R. Civ. P. 15(a)(2), a pleading may be amended before trial with leave of the Court, which "should freely give leave when justice so requires."

    B.  **Application**

In support of its motion to amend, CHC contends that Authoria will suffer no prejudice or inconvenience if the motion is allowed because litigation is still in the early stages, before discovery has opened or a scheduling conference has been held.  It explains that it filed the complaint prior to making a demand on Authoria because it wished to position itself as the plaintiff in the pending lawsuit and it feared that, upon receiving the demand, Authoria would have brought suit.

        1.  **Chapter 93A**

CHC asserts that its proposed Chapter 93A claim is viable because it satisfies the pleading requirements set out in the Federal Rules of Civil Procedure.  Indeed, to the extent it does not involve fraud, a Chapter 93A claim is not subject to a heightened pleading requirement.  U.S. Funding, Inc. of Am. v. Bank of Boston, 551 N.E.2d 922, 925 (Mass. App. Ct. 1990).

CHC also contends that it complied with the requirements for bringing suit under Chapter 93A by first submitting a demand letter.  Authoria responds that CHC did not need to make a demand

-4-

because it brought a business-to-business claim under Chapter 93A, § 11.  Authoria correctly points out that the demand requirement applies only to <u>persons</u>, not businesses, who seek a remedy for unfair and deceptive business practices under Chapter 93A, § 9.  <u>See</u> <u>Frullo</u> v. <u>Landenberger</u>, 814 N.E.2d 1105, 1108 n.4 (Mass. App. Ct. 2004).  Because CHC's complaint refers only to § 11 and does not appear to arise under § 9, its argument with respect to the demand letter is irrelevant.

In addition, Authoria argues that the Court should not permit the addition of a Chapter 93A claim because doing so would be futile.  <u>See</u> <u>Patoski</u> v. <u>Jackson</u>, 477 F. Supp. 2d 361, 362 (D. Mass. 2007).  According to Authoria, CHC expressly waived any 93A remedies pursuant to the Agreement's limitation of liability provision.  Authoria directs the Court's attention first to Section 8.2 of the Agreement which states

> [CHC's] exclusive remedy and AUTHORIA's sole liability under Section 8.1(a) shall be, at AUTHORIA's sole option, to replace the Software or refund the purchase price for the copy of the Software.

As CHC points out, however, the scope of Section 8.2 is limited because Section 8.1(a) refers only to Authoria's warranty obligations.  Accordingly, Section 8.2 does not preclude CHC from bringing a claim such as one pursuant to Chapter 93A which encompasses far more than mere warranty obligations.  Authoria also directs the Court's attention to other disclaimers of liability contained in Section 8.4 of the Agreement but those are

-5-

similarly unavailing because of express exceptions carved out for
intentional misconduct, which is clearly at the heart of CHC's
Chapter 93A claim.  As such, the addition of a Chapter 93A claim
to CHC's complaint is not futile.

### 2.   Fraud

Perhaps in response to the stayed motion to dismiss, CHC
seeks to amend its complaint by providing greater detail about
the alleged fraudulent misrepresentations of Authoria.  Pursuant
to Fed. R. Civ. P. 9(b), claims of fraud, unlike most other
claims, must be plead with particularity.  Under that heightened
standard, a plaintiff must identify the fraudulent statement or
representation, the person making the statement, and when the
statement was made.  See Rodi v. S. New England Sch. of Law, 389
F.3d 5, 15 (1st. Cir. 2004).  CHC recognizes those requirements
and claims to have satisfied them.

Authoria disagrees.  It claims that CHC only identifies the
entity Authoria as the speaker of fraudulent statements and that
an allegation of fraud must refer to a specific person to survive
the Rule 9(b) standard.  See In re Sepracor, Inc. Sec. Litig.,
308 F. Supp. 2d 20, 38 (D. Mass. 2004) (providing that a
complaint which alleged fraudulent statements by "senior
management" would be dismissed unless the plaintiff amended it to
include the name(s) of the speakers).  Authoria also claims that
CHC does not identify where or when the allegedly fraudulent

-6-

statements were made.

That argument is inaccurate and indecisive.  The amended complaint provides that meetings to negotiate the Agreement were held during identified periods of time in 2006 and 2007 in particular cities.  It then describes the content of certain statements (later alleged to be fraudulent) and identifies at which meeting the statement or statements were made and which Authoria employees, described by name and title, made them.  For example, the amended complaint describes how Chuck Clesser, Authoria's Head of Global Partner Relationships, and Derek Beebe, Authoria's Regional Sales Director, represented to CHC at meetings held between September 18 and 23, 2006, in Waltham, Massachusetts, that Authoria's product was fully functioning, even though at the time they were aware that Version 10 would not be immediately available as a fully functioning software platform.  That statement, and others similarly described in the amended complaint, meet the requirements of Fed. R. Civ. P. 9(b).

Authoria also claims that CHC alleges that certain fraudulent misrepresentations were made after the Agreement was formed and that those statements fail to satisfy the heightened pleading standard.  However, Count III refers only to negotiations leading up to the execution of the Agreement. Therefore, Authoria's argument is misplaced.

Authoria's next argument as to why CHC should not be allowed to amend its fraud claim is that, even if the allegations meet the Rule 9(b) standard, an integration clause contained in the Agreement contradicts CHC's allegation that it relied on any material misrepresentations leading up to the contract's execution.  Alternatively, it points to a provision in the Agreement which states that Authoria is bound only by the warranties contained in the Agreement and which, according to Authoria, expressly disclaims the fraudulent statements that CHC alleges.

CHC persuasively responds, however, that contractual language does not automatically shield a contracting party from all claims of fraud in the inducement but rather only from those directly contradicting a specific contract provision.  See Starr v. Fordham, 648 N.E.2d 1261, 1268 (Mass. 1995); Armstrong v. Rohm & Haas Co., Inc., 349 F. Supp. 2d 71, 76-77 (D. Mass. 2004).  CHC makes numerous allegations of pre-contract representations that are not specifically contradicted by the Agreement.  For example, CHC alleges that Authoria represented to CHC that its software was "world class quality," could be marketed and would come with complete supporting documentation.  As Authoria itself recognizes in its brief, the Agreement is silent as to the software's quality, ability to be marketed and any obligation to provide supporting documentation.  The Agreement, therefore, does not

directly contradict all of CHC's allegations of fraudulent misrepresentations and thus the integration clause and disclaimer in Section 8.4 cannot fully shield Authoria from potential liability for fraud.

## ORDER

In accordance with the foregoing, the plaintiff's motion to amend (Docket No. 9) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: April 28, 2009